UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| ALVA RAY VAUGHN, ) | C/A No. 4:09-03286-RMG-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Report and Recommendation |
| ) | |
| MS. REAMES, CLASSIFICATION CASE MANAGER; ) | |
| MS. B. HICKMON, CASEWORKER; ASSOCIATE ) | |
| WARDEN, A.W. BELL, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## I. PROCEDURAL BACKGROUND

The Plaintiff, Alva Ray Vaughn ("Plaintiff"), filed this action under 42 U.S.C. § 1983[1] on December 23, 2009. Plaintiff alleges that his constitutional rights were violated by Defendants while housed at Lee Correctional Institution (LCI) when he was attacked by a group of "gang members" after he was placed in the wrong classification status. Plaintiff is currently housed at Kershaw Correctional Institution. Defendants filed a motion for summary judgment on November 30, 2010. Because Plaintiff is proceeding pro se, the court issued an order on or about December 22, 2010, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the Defendants' motion for summary judgment. Plaintiff filed a response in opposition on January 31, 2011.

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

## II.  DISCUSSION

### A.  STANDARD FOR SUMMARY JUDGMENT

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable

to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." Id. at 322; see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

### B. ARGUMENT OF PARTIES/ANALYSIS

Plaintiff alleges that Defendants subjected him to an attack by other inmates based upon placement in the wrong classification system at Lee Correctional Institution ("LCI"). Specifically, Plaintiff alleges as follows in his complaint, quoted verbatim:

> I have been violently assaulted (stabbing) by a group of gang members 2/28/09 at Lee Correctional Institute which is a level 3 institute for violent offender with 30 years and plus after being placed in a medium custody level 3 dormatory in which does not match my custody which at the time I was minimum custody. I wrote the classification officer over the Chesterfield unit Mr. Tedder. Mr. Tedder advised Associate Warden Bell about this situation. Warden Bell refused to move me. Then I was placed in Darlington unit from protected custody (P.C.) After eight months of being in Darlington unit the case manager Barbara Reams, Ms. B. Hickman and

3

> associate Warden Bell advised me that I would be moving back to Chesterfield unit where this incident occurred. 11-17-09. I received a room assignment form for me to move from Darlington 2253 to Chesterfield 2145. I have been at Lee Correctional Level 3 institution for over a year with a 8 years non-violent sentence. I have been placed in rooms with inmates with 30 years to life sentences. This Institution is supposed to only house inmates with long violent sentences. These experiences have made me mentally disturb due to breach of security and fear for my life. My life is being place in jeopardy due to these circumstances at Lee Correctional. I'm currently on protected custody in ASU Administrative Segregated Unit (Lock up) due to fear for my life and being place back in Chesterfield unit. I was mislead to understand that I would be transferred after the incident which occurred in March in Chesterfield unit after I was violently (stabbing) assaulted. I'm also eligible to gain earn work credits (E.W.C.) I was without work credits from March 29 of 2008 until which is preventing me from early release. I have been deprived of privileges as an medium 2 custody inmate under these circumstances of being housed at a Level 3 distribution medium 3 and minimum 3 custody unjustly. I've filed a grievance on this matter on 3-2-09 and nothing has been done about the situation.
>
> I request for an injunction for the court to step in and investigate this matter, also to correct the unjust acts of Lee Correctional Security and Classification system. Also to order South Carolina [D]epartment of Corrections, Lee correction to pay me $5,500 a day for every day that I have been confined housed at Lee Correctional Institute. After being housed in a medium custody unit being violently assaulted by Gang members under supervision of S.C.D.C.

(Complaint).

Defendants filed their motion for summary judgment and attached the affidavit of Barbara Reames ("Reames") who attests that she is employed by the SCDC as a Case Manager in the Classification Division at Lee Correctional Institution (LSI). (Reames affidavit, doc. #38-2). Reames is familiar with the allegations in Plaintiff's complaint concerning his classification status and the allegation of attack by another inmate. (Id.). Reames attached to her affidavit a copy of the computerized inmate offense history maintained by SCDC reflecting major and administrative disciplinaries Plaintiff received from July 26, 2003, through July 20, 2010. (Id.). Plaintiff was transferred from Palmer Pre-Release Center to LCI on September 29, 2008, due to a "pending major

disciplinary for exhibitionism and public masturbation." (Id.). On October 8, 2008, Plaintiff was convicted of the major disciplinary and sanctioned to wear a pink jumpsuit for 90 days. (Id.). LCI has a housing procedure in place for all inmates sanctioned to wear pink jumpsuits and convicted of a major disciplinary to be housed in the Chesterfield Unit. (Id.). On March 3, 2009, Plaintiff was placed in the Special Management Unit (SMU) on protective custody after the alleged incident and at no time prior to the alleged incident was LCI on notice of any safety concerns involving Plaintiff. (Id.). On March 5, 2009, Plaintiff appeared before the institutional Protective Concerns Committee which recommended that Plaintiff be released to the general population in the Darlington Unit due to being unable to validate protective concerns. (Id.). On November 17, 2009, Plaintiff was convicted of two major disciplinaries for "Out of Place" and "refusing or failing to Obey," causing him to be reassigned to the Chesterfield Unit. Plaintiff was discovered mixing with the inmates housed in the Chesterfield Unit when he should have been with inmates from the Darlington Unit. (Id.). Reames attached a copy of the computerized display of offenses maintained by SCDC entitled SCDC Offender Management Systems: Inmate Disciplinary System" reflecting the November 2009 incident whereby Plaintiff was discovered to be out of place. (Id.).

As to Plaintiff's allegations concerning his ineligibility to earn work credits, Reames attached a copy of a one page memorandum from Warden Padula to all LCI inmates dated April 23, 2009, reflecting policies maintained by the SCDC concerning job assignments of inmates. (Id.). The memorandum states that inmates found guilty of a major disciplinary violation of more than two administrative disciplinaries within six months will be terminated from their job assignments and moved to the east yard and placed on unemployed status for six months before being placed on a job assignment waiting list. (Id. and attached memorandum #6).  Number 7 in the Warden's

memorandum states that inmates who met eligibility requirements and are waiting for an available job assignment will be placed on a job assignment waiting list and will be housed primarily in the Darlington Unit. As jobs become available, inmates will be assigned from the waiting list and moved to the west yard when bed space becomes available. (Id. and attached memorandum #7). Reames also attached a copy of the computerized history of Earned Work Credit (EWC) Assignments maintained by SCDC reflecting the EWC's received by Plaintiff from August 14, 2003, until present. (Id. and attachment Exhibit D). With regard to Plaintiff's allegation that he was without work credits from March 29, 2008, Reames attests that Plaintiff was not incarcerated at LCI until June 16, 2008, and served as a sanitation worker from July 16, 2008, to September 18, 2008. (Id.). From September 19, 2008, until September 29, 2008, Plaintiff worked on a labor crew. (Id.). From September 30, 2008, until March 3, 2009, Plaintiff served as a general worker at LCI and continuously earned EWC during these time periods. (Id.). Plaintiff was placed on unemployed statues beginning March 3, 2009, when he was placed in the SMU on protective custody. (Id.). On March 5, 2009, Plaintiff was transferred to the general population in the Darlington Unit which houses inmates who have unemployed status and remained on unemployed status. (Id.). While housed in the Darlington Unit, Plaintiff was placed on a job assignment waiting list and would have been assigned a job if it became available. (Id.). However, Plaintiff was found guilty of two major disciplinaries while housed in the Darlington Unit which required he be moved to the Chesterfield unit and remain on unemployed status for six months before being placed on a job assignment waiting list. (Id.). Reames attests that Plaintiff resumed his earned work credits on March 9, 2010, and has been earning credits since that time. (Id.). Therefore, the only time Plaintiff was without earned work credits was due to his protective custody placement and his convictions for major

disciplinary violations. (Id.). Reames attests that she has not knowingly violated any constitutional rights of Plaintiff and attests that the documents attached to her affidavit are true and accurate copies of the original documents maintained by the SCDC. (Id.).

### Deliberate Indifference to Risk of Harm

With regard to Plaintiff's allegation that Defendants were deliberately indifferent to a risk of harm, the claim should be denied. The Supreme Court recognized that punishment prohibited by the Constitution does not result from negligence on the part of prison officials. The Supreme Court stated this principle and established the appropriate standard in Whitley v. Albers, 475 U.S. 312 (1986).

> [t]o be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interest or safety.
> . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the
>
> Cruel and Unusual Punishments Clause. . . . Id., at 1084.

Based on these precedents the issue is whether an inmate who has suffered injury has alleged and offered evidence that the prison officials "wantonly and obdurately failed to take precautions for his safety in deliberate indifference to a specific known risk of harm. . . ." Ruefly v. Landon, 825 F.2d 792 (4th Cir. 1987). The Supreme Court has recently defined "deliberate indifference" in the context of the liability of physical injury to an inmate. In analyzing case law, the court concluded that deliberate indifference must be something more than mere negligence, but less purposeful or knowing conduct. The court held: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825 (1994).

The Supreme Court defined "deliberate indifference" in the Eighth Amendment context in Farmer v. Brennan, 511 U.S. 825 (1994). The court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement <u>unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference</u>. (Emphasis added). This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concern when it imposes tort liability on a purely objective basis. [Citations omitted]. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38.

The obduracy and wantonness standard applies to prison officials in supervisory positions as well as to guards and corrections officers who deal with inmates directly. Thus, a supervisor must know of a specific risk or be aware of a pervasive risk of harm and act "wantonly, obdurately, or with deliberate indifference to that specific or pervasive risk of harm." Moore v. Winebrenner, 927 F.2d 1312 (4th Cir.), cert. denied, 502 U.S. 828 (1991).

Plaintiff fails to make a showing that the prison officials wantonly and obdurately failed to take precautions for his safety or showed deliberate indifference to a specific known risk of harm, that the officials were both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and that they also drew the inference. Farmer, supra; Rich v. Bruce, 129 F.3d 336 (4th Cir. 1997)("A defendant is not subjectively reckless where, although he is aware of the

existence of a general risk, he is unaware that his conduct is inappropriate in light of that risk. True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk.").[2]

Assuming Defendants' actions were indicative of negligence, a showing of mere negligence will not meet the deliberate indifference standard. Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). Neither the Fourteenth Amendment Due Process Clause, Davidson v. Cannon, 474 U.S. 344, 347 (1986), nor Eighth Amendment, Moore v. Winebrenner, 927 F.2d 1312, 1316 (4th Cir. 1991) is violated by negligent failure to protect inmates from violence. Thus, the undersigned recommends that this claim be dismissed and summary judgment granted in favor of the Defendants.

### Custody Classification/Ability to Earn Work Credits

Plaintiff's allegations with regard to custody classification fails. No liberty interest is created in custodial classifications. Meachum v. Fano, 427 U.S. 215, 225 (1976). Additionally, decisions relating to the day-to-day operation of prisons are entrusted to the officials of the particular institution or correctional system. See Olim v. Wakinekona, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed. 813 (1983). *See also*, Meachum v. Fano, 427 U.S. 215, 223-24 (1976) (prisoner has no due process right to be housed in any particular facility). Therefore, it is recommended that Defendants' motion for summary judgment be granted with respect to this issue.

As to Plaintiff's allegations that he was denied the right to earn work credits when placed in the Chesterfield Unit, the claim fails. Plaintiff was allowed to earn work credits until he was

---

[2] Apparently, Plaintiff had a dispute with his roommate the month before the alleged incident. (See docs. #43-1, inmate grievance form, and doc. #43-2, dated January 19, 2009, Notice of Placement in PHD).

convicted of disciplinary violations that affected his housing assignment. (Reames' affidavit). Plaintiff was transferred to a unit which housed inmates who have unemployed status due to his own disciplinary violations. (Id.). Further, inmates who have multiple disciplinary infractions are placed on unemployed status for a period of time and are not entitled to earn work credits. (Id.). These facts are not disputed.

Furthermore, the undersigned notes that inmates have no liberty interest in earning work time credits or participating in work programs. All inmate job assignments are subject to the institution's needs, and inmates do not have any fundamental constitutional right to any specific work assignment. Ingram v. Papalia, 804 F.2d 595, 596-97 (10th Cir.1986); Altizer v. Paderick, 569 F.2d 812, 813 (4th Cir.1978).; Toussaint v. McCarthy, 801 F.2d 1080, 1094-95 (9th Cir.1986). An inmate's expectation of keeping or obtaining a specific prison job, or any job, does not implicate a protected constitutional right. See, e.g., Coakley v. Murphy, 884 F.2d 1218, 1221 (9th Cir.1989) (holding that inmates have no protected property interest in continuing in work-release program); Flittie v. Solem, 827 F.2d 276, 279 (8th Cir.1987) (opining that inmates have no constitutional right to be assigned to a particular job). Therefore, it is recommended that Defendants' motion for summary judgment be granted with respect to these issues.

### B.  QUALIFIED IMMUNITY

Defendants argue that they are all entitled to qualified immunity. Defendants assert Plaintiff cannot establish that any Defendant violated a constitutional right.

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the Plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." Wilson v. Layne, 526 U.S. 603, 609 (1999); *see also* Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." Wilson, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." Porterfield v. Lott, 156 F.3d 563, 567 (4th Cir. 1998).

In Maciariello v. Sumner, 973 F. 2d 295 (4th Cir. 1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity when it set forth that:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in

> which this right applies to the actions of the official
> must also be apparent. Officials are not liable for bad
> guesses in gray areas; they are liable for transgressing
> bright lines.

Maciariello, 973 F. 2d 295, 298 (4th Cir. 1992) (Citations omitted).

For a Plaintiff to recover, he must show the Defendants (i) violated a particular right clearly established in law, and (ii) the application of that right to the actions of the official must be apparent or that defendants were deliberately indifferent to a known risk of harm or serious medical need. The Plaintiff in this case has not done so. As stated above, Plaintiff fails to present evidence of deliberate indifference. Thus, he fails to show a violation of a constitutional right. Therefore, the undersigned recommends that the motion for summary judgment filed by the Defendants be granted on the basis of qualified immunity.

### C. INJUNCTIVE RELIEF

Since Plaintiff is no longer incarcerated at the Lee Correctional Institution, to the extent he has requested declaratory and/or injunctive relief, his claims are moot. Plaintiff is currently housed at Kershaw Correctional Institution. Claims for injunctive and declaratory relief become moot when a prisoner is no longer subjected to the condition complained of. Williams v. Griffin, 952 F.2d 820, 825 (4th Cir. 1991); Ross v. Reed, 719 F.2d 689, 693 (4th Cir. 1983).

### D. PENDENT JURISDICTION

Assuming Plaintiff's § 1983 claim is dismissed by this Court and Plaintiffs' complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want

of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

### III.  CONCLUSION

Based on the above reasoning, Plaintiff has failed to show that Defendants violated any of his constitutional or statutory rights under 42 U.S.C. § 1983.  It is therefore, for the reasons stated herein,

RECOMMENDED that the motion filed by Defendants (doc. #38) for summary judgment be GRANTED IN ITS ENTIRETY.

IT IS FURTHER RECOMMENDED that any other outstanding motions be deemed MOOT.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

June 24, 2011
Florence, South Carolina

**The parties' attention is directed to the important information on the attached notice.**