IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Alva Ray Vaughn,<br><br>    Plaintiff,<br><br>    v.<br><br>SCDC, et al.,<br><br>    Defendants. | Case No. 4:09-cv-03286-RMG<br><br>ORDER |

Alva Ray Vaughn ("Plaintiff") filed this *pro se* action pursuant to 42 U.S.C § 1983. As a result, this case was automatically referred to the United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2)(d), D.S.C. Plaintiff contends that his constitutional rights were violated by Defendants when he was attacked by inmates while he was allegedly housed based upon the wrong classification status. The Defendants filed a Motion for Summary Judgment (Dkt. No. 38), and the Plaintiff filed a Response in Opposition (Dkt. No. 43). The Magistrate Judge issued a Report and Recommendation recommending this Court grant Defendants' Motion for Summary Judgment. (Dkt. No. 48.) Plaintiff has objected to the Report and Recommendation. (Dkt. No. 51.) As explained herein, this Court agrees with the Report and Recommendation and grants Defendants' Motion for Summary Judgment.

## STANDARD OF REVIEW

### A. Legal Standard for Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

### B. Magistrate Judge's R&R

This court is charged with conducting a *de novo* review of any portion of the Magistrate Judge's R&R to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendations contained in that R&R. 28 U.S.C. § 636(b)(1). After a review of the entire record, the R&R, and Plaintiff's objections, the Court finds that the Magistrate Judge fairly and accurately summarized the facts and applied the correct principles of law. Accordingly, the court adopts the R&R and fully incorporates it into this Order.

## ANALYSIS

Plaintiff contends that he was attacked by a "group of gang members" on February 28, 2009, he is mentally disturbed, and his life is in jeopardy because he was placed in the wrong

classification system at Lee Correctional Institution ("LCI"). More specifically, Plaintiff asserts that because he is serving an eight-years non-violent sentence, he should not have been housed in the Chesterfield Unit, as that unit houses more violent inmates who have 30 years to life sentences. (Dkt. No. 1). Defendants responded with a Motion for Summary Judgment and included the Affidavit of the SCDC Case Manager in the Classification Division at LCI, Barbara Reames ("Reames"). (Dkt. No. 38-2). Reames also provided a copy of Plaintiff's inmate offense history which shows disciplinary incidents involving the Plaintiff from July 26, 2003 through July 20, 2010. (Id.) Reames states in her Affidavit that Plaintiff was transferred to LCI on September 29, 2008 because of a pending disciplinary action for exhibitionism and public masturbation. (Id.) She further states,

> Inmate Vaughn was convicted of the major disciplinary on October 8, 2008 and was sanctioned to wear a pink jumpsuit for 90 days. LCI has a housing procedure in place for all inmates sanctioned to wear pink jumpsuits and convicted of a major disciplinary to be housed in the Chesterfield Unit.

(Id. ¶ 5; Dkt. No. 38-2.) According to Reames, after the alleged attack on Plaintiff in February of 2009, he was moved to the Special Management Unit for protective custody on March 3, 2009. (Id. ¶ 6.) Reames further states, "At no time prior to the alleged incident was LCI on notice of any safety concerns involving Plaintiff." (Id.) Reames states that Plaintiff was released into the general population in the Darlington Unit on March 5, 2009, because the Protective Concerns Committee did find continued protective measures necessary. (Id. ¶ 7.) Ms. Reames' Affidavit additionally states,

> On November 17, 2009, Plaintiff was convicted of two major disciplinaries for "Out of Place" and "Refusing or Failing to Obey," causing him to be reassigned to the Chesterfield Unit. Plaintiff was discovered mixing with the inmates housed in

the Chesterfield Unit when he should have been with inmates from the Darlington Unit.

(Id. ¶ 8.) The evidence before the Court therefor shows that Plaintiff was correctly classified and assigned to the Chesterfield Unit as a result convictions for major disciplinary violations.

Further, the Court notes that one of the disciplinary violations of which Plaintiff was convicted was "Out of Place," a charge imposed because Plaintiff was socializing with Chesterfield Unit inmates rather than Darlington Unit inmates. Plaintiff's voluntary association with members of Chesterfield Unit, even while such behavior is prohibited, makes it difficult for Plaintiff to argue that his placement there could cause mental disturbance or place his life in jeopardy. Moreover, there is no liberty interest in custodial classifications, Meachum v. Fano, 427 U.S. 215, 225 (1976), and a custodial classification decision is one the correctional officer is entitled to make as it is related to the daily operation of the prison. See Olim v Wakinekona, 461 U.S. 238 (1983). There is therefore no evidence that Defendants violated Plaintiff's constitutional rights by assigning him to live in the Chesterfield Unit.

Plaintiff also contends that Defendants were deliberately indifferent to a risk of harm. The Supreme Court has defined the "deliberate indifference" required to prove liability of physical injury to an inmate to mean that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825 (1994). A supervisor must also act "wantonly, obdurately, or with deliberate indifference to that specific or pervasive risk of harm." Moore v. Winebrenner, 927 F.2d 1312 (4th Cir. 1991). The only evidence in the record shows that Defendants had no knowledge of any safety concerns involving Plaintiff prior to the alleged

stabbing in February of 2009. (See Reames Aff. ¶ 6.) Plaintiff has failed to provide evidence that any of the prison officials wantonly or obdurately disregarded a known risk of harm, knew of facts which could provide a basis to draw an inference that substantial harm existed, and that they also drew such an inference. Further, even a showing of mere negligence would not be enough to hold the prison officials liable for failure to protect inmates from violence. Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). Plaintiff is therefore not entitled to relief on this claim.

Plaintiff also asserts that from March 29, 2008 he was unable to earn Work Credits, and thus was prevented from earning early release, due to the alleged improper classification. However, Defendants provided a memo from Warden Padula which explains LCI's job assignment policy. (See Reames Aff. ¶ 10; see also Reames Aff. Ex. C.) According to LCI's policy, inmates who have been convicted of a major disciplinary violation "will be terminated from their job assignments and moved to the east yard and placed on unemployed status for six months before being placed on a job assignment waiting list." (Reames Aff. ¶ 11; see also Reames Aff. Ex. C.) Reames further explains that "inmates who meet eligibility requirements and are waiting for an available job assignment will be placed on a job assignment waiting list and will be housed primarily in the Darlington Unit. As jobs become available, inmates will be assigned from the waiting list and moved to the west yard when bed space becomes available." (Reames Aff. ¶ 12.)

Reames attached a copy of the history of Earned Work Credits Plaintiff received from August 14, 2003 to the present. (Reames Aff. ¶ 13; Reames Aff. Ex. D.) Reames explains Plaintiff's work history:

> 14. With regard to Plaintiff's allegation that he was without work credits from March 29, 2008 until an unspecified period in his Complaint, Plaintiff was not incarcerated at LCI until June 16, 2008. From July 16, 2008 to September 18, 2008, Plaintiff served as a sanitation worker. From September 19, 2008 to September 29, 2008, Plaintiff worked on the labor crew. From September 30, 2008 until March 3, 2009, the Plaintiff served as a general worker at LCI. Plaintiff continuously earned EWC during this time.
>
> 15. On March 3, 2009, Plaintiff was placed on unemployed status while he was placed in the Special Management Unit on protective custody on March 3, 2009. On March 5, 2009, Plaintiff remained on unemployed status as he was transferred to the general population in the Darlington Unit, which houses inmates who have unemployed status.

(Reames Aff. ¶¶ 14-15.) Reames explains that Plaintiff would have been assigned a job when one became available, but because he was convicted of two major disciplinary actions while living in the Darlington Unit, he was placed on a six month hold before he could be put back on the job assignment waiting list. (Reames Aff. ¶¶ 16-17.) Reames states in her Affidavit that "Plaintiff resumed his earned work credits on March 9, 2010 and has been earning credits since that time." (Id. ¶ 18.) She states, "The only time the Plaintiff was without earned work credits was due to his protective custody placement and his convictions for major disciplinary violations." (Id. ¶ 19.)

In his Objections, Plaintiff asserts that Ms. Reames' statement that he was incarcerated at LCI from June 16, 2008 to September 18, 2008 "is false and untrue" because he was incarcerated at Perry Correctional Institution from June 16, 2008 to September 18, 2008, and he was incarcerated at Palmer Pre-Release Center from September 19, 2008 to September 29, 2008. (Objections at 1.) Even if Ms. Reames' dates about Plaintiff's incarceration at LCI are incorrect, this does not mean Ms. Reames' statements about Plaintiff's work history and EWC are untrue. Exhibit D to Ms. Reames' Affidavit is Plaintiff's "History of EWC Assignments" for the South Carolina Department of Corrections. In his Objections, Plaintiff does not dispute that he was

working and has EWC from (a) July 16, 2008 to September 18, 2008, for work as a sanitation worker; (b) from September 19, 2008 to September 29, 2008 for work as a labor worker, and (c) from March 9, 2010 to November 23, 2010. (See Objections; see also Reames Aff. Ex. A.) Plaintiff does contend that he could not possibly have been receiving EWC from September 30, 2008 until March 3, 2009, as "during those periods [he] was placed on unemployment status due to major disciplinary from September 29, 2008." (See Objections at 2.) A fair reading of Plaintiff's Objections indicates that he contends he did not receive EWC from September 30, 2008 to March 3, 2009, given that he was convicted of exhibitionism and public masturbation on September 29, 2008, and therefore "placed on unemployment status" for six months. (Id.)

It is unclear to the Court why Plaintiff would make such an objection, as he seems to be arguing he received EWC when he should not have in fact received such credit. Such an argument certainly appears to be against Plaintiff's interest, and in any event, if Plaintiff received EWC for time he did not actually work, such a receipt does not–in any way–violate his constitutional rights. Furthermore, inmates do not have a constitutional right to a work placement. Altizer v. Paderick, 569 F.2d 812, 813 (4th Cir. 1978). There is no evidence before this Court that indicates Defendants wrongfully prohibited Plaintiff from earning Work Credits; Plaintiff's objections are without merit.

Defendants assert that Plaintiff has not demonstrated any violation of constitutional rights and that any claims to the contrary are barred by qualified immunity. The Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald,

457 U.S. 800, 818 (1982). Here, Plaintiff has failed to prove that the prison officials have violated any clearly established constitutional rights and thus the alleged actions are barred from suit based on qualified immunity.[1]

Finally, Plaintiff's request for injunctive relief or declaratory judgment is moot because he is no longer housed in LCI. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991); Ross v. Reed, 719 F.2d 689, 693 (4th Cir. 1983). Additionally, given this Court's ruling on Plaintiff's federal claims, the Court declines to exercise jurisdiction over any state law claims that Plaintiff may have as a result of the allegations in his Complaint. See 28 U.S.C. § 1367(c).

## CONCLUSION

It is therefore **ORDERED**, for the foregoing reasons, that the Magistrate Judge's Report and Recommendation is **ADOPTED**. It is further **ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED**. To the extent Plaintiff's Complaint asserts claims under state law, those claims are **DISMISSED**.

**AND IT IS SO ORDERED.**

The Honorable Richard Mark Gergel
United States District Judge

**Charleston, South Carolina**
**July 19, 2011**

---

[1] In the R&R, the Magistrate Judge states that "In addressing qualified immunity, the United States Supreme Court has held that 'a court must first determine whether the Plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation.' Wilson v. Layne, 526 U.S. 603, 609 (1999)." (R&R at 11.) This rigid framework, however, was abandoned in Pearson v. Callahan, 555 U.S. 223 (2009). Under Pearson, a court has discretion in determining which prong to address first. Id. Thus, to the extent the analysis pursuant to qualified immunity is misstated, the Court does not adopt that portion of the R&R. The Court does adopt, however, the Magistrate Judge's conclusion that Defendants are entitled to qualified immunity because Plaintiff has failed to show a violation of a constitutional right.